[No. 1836, April 29, 1916.]

ENDERSTEIN v. ATCHISON, T. & S. F. RY. CO.

### SYLLABUS BY THE COURT.

1. Where the appellant alleges that an interstate shipment was made by her agent, she is not in position to question the authority of the agent to place upon the same a released valuation, limiting the liability of the carrier.    P. 552

2. Where appellant fails to request findings and conclusions by the trial court, and fails to call attention to the omission, such omission is not available here.    P. 553.

3. A shipper of an interstate shipment is conclusively presumed to know the shipping rate according to the printed and posted tariffs filed with the Interstate Commerce Commission, and that rate automatically attaches to each shipment according to the declared value thereof.

P. 553

4. A limitation of liability of an interstate carrier, based upon the declared value of a shipment, is not a contract exempting the carrier from its own negligence.

P. 555

Appeal from District Court, Valencia County; Colin Neblett, Judge.

Action by Hilda Enderstein against the Atchison, Topeka and Santa Fé Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

M. C. SPICER of Socorro, for appellant.

Agent could not delegate power to sub-agent to bind principal by contracting with company to limit its liability.
1 A. & E· Enc., L. 972; 31 Cyc. 1425; 2 C. J. 685, 663-664; St. L., etc., R. Co. v. Blocker, 138 S. W. 156; Ohio, etc., R. Co. v. Hamlin, 42 Ill. App. 441; Buckland v. Adams Exp· Co., 97 Mass. 124, 93 Am. Dec. 62; Judson v. Western R. R. Corp., 83 Am. Dec. 649.

An infant cannot legally appoint an agent.
Trueblood v. Trueblood, 65 Am. Dec. 756; Ware v. Cartledge, 60 Am. Dec. 493; Dexter v. Hall, 15 Wall· 25.

The limitation of responsibility must be clearly assented to.
Buckman v. Exp. Co., 93 Am. Dec. 72.

Every matter of doubt under such a contract will be resolved in favor of shipper.
5 Am. & Eng. Enc., L. 314, 335.

Non-liability clause does not relieve carrier of negligence.

Mynard v. Syracuse, etc., R. Co., 71 N. Y. 180, 21 Am. R. 28.

Burden is on carrier to show himself free from negligence.

South, etc., Alabama Co. v. Henlein, 52 Ala. 606, 23 Am. Rep. 578; Adams Express Co· v. Stettaners, 61 Ill. 184, 14 Am. Rep. 57; Texas, etc., R. Co. v. Richmond, 94 Tex. 571, 63 S. W. 619; 6 Cyc. 385.

Court erred in failing to make findings and file same with clerk.

Sec. 4197, Code. 1915·

W. C. REID and C. M. BOTTS, both of Albuquerque, for appellee.

As to liability of carrier for shipment of goods at common law, see:

Hart v. Penn. R. R. Co., 112 U. S. 331; Rosenfeld v. Peoria, etc., R. Co·, 53 Am. R. 502; 4 R. C. L. 855.

If shipper elects to take the risk rather than pay the carrier additional compensation, no rule of law or rule of public policy is violated thereby.

Squire v. N. Y. C. R. R. Co., 98 Mass. 239, 93 Am. Dec. 162; Cragin v. N. Y. C· R. R. Co., 51 N. Y. 61; Baltimore, etc., R. R. Co., v. Rathbone, 1 W. Va. 87; Bissel v. N. Y. C. R. R· Co., 25 N. Y. 442; Penn. v. B. & E. R. R. Co., 49 N. Y. 204; Louisville & Nashville R. R. Co. v. Gilbert Parks & Co., 89 Tenn· 430, 4 R. C. L. 783.

Where valuation is released, only rate applicable to released valuation can be collected.

M., K. & T. Ry. Co. v. Walston, 133 Pac. (Okla.) 42.

Contract was ratified by bringing of this suit.

Mechem on Agency, sec· 446; B. & O. R. R. \Co. v. Rathbone, 88 Am. Dec. 664.'

Cannot adopt contract in part without adopting it wholly.

Schoniger v.. Peabody, 14 Am. St. R. 88.

Limitation in contract is not an attempt to absolve carrier from liability, but carriers are liable for negligence and as an insurer for agreed value of shipment.

Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. Rep· 148, 57 Law Ed. 314; Chicago, St. P., M. & O. Ry. Co. v. Latta, 226 U. S. 569, 33 Sup. Ct. Rep. 155, 57 Law Ed. 328; Chicago, B. & Q. Ry. Co.°v. Miller, 226 U. S. 513, 33 Sup. Ct. Rep. 155, 57 Law Ed. 323; Kansas City S. R. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. Rep. 391, 57 Law Ed. 683; Mo., K. & T. Ry. Co. v. Harriman Bros., 227 U· S. 657, 33 Sup. Ct. Rep. 397, 57 Law Ed. 690.

No requests for findings were made, no findings proposed, and the omission of court was not called to its attention in any appropriate manner.

Candelario v. Miera, 13 N. M. 360; 2 R. C. L. 204; Bank of Commerce v. Baird M. Co., 13 N. M· 431; Radcliffe v. Chaves, 15 N. M. 258.

## OPINION OF THE COURT.

PARKER, J.—The appellant brought suit on the contract of carriage, to-wit, a bill of lading for $672.90 damages for the loss of a trunk forwarded by freight from Belen, N. M., to Santa Barbara, Cal., in December, 1913. From a judgment for $26 in favor of appellant, this appeal is taken by her.

The bill of lading contained the notation "Val. Rel. to Val. $10 per cwt." The shipment was a trunk, crated, and the trunk and contents were destroyed by fire before reaching destination. The shipment was sent collect and the charges thereon were never paid. The weight of the shipment was 260 pounds, and the appellee admits its

552SUPREME COURT OF NEW MEXICO,

liability in the sum of $26, for the loss of the shipment. Appellant was in Santa Barbara at the time of the shipment, and requested her brother to ship the trunk to her at that point. He had some conversation with the local agent of the appellee at Belen as to the best and cheapest way to ship the trunk, and was told that the cheapest way to ship the trunk was by freight, rather than express. He was anxious to ship the trunk as cheaply as possible. The agent testified that he informed the brother of appellant that if he shipped the trunk at the lowest freight rate the railroad company would not be liable in case of loss for more than $10 per hundredweight of the shipment. After this conversation with the agent he requested one M. E. Rigney, who was shipping clerk for a mercantile establishment in the town, to do the actual shipping of the trunk. This Rigney did, and signed the bill of lading and request to ship the trunk in the name of the brother of the appellant, by himself.

At the time of this shipment the appellee had in force and effect two freight rates on shipments of that kind between Belen, N. M., and Santa Barbara, Cal.; the lower of the two rates being based upon the valuation of $10 per hundredweight and less, and the higher of the two rates based upon the valuation of more than $10 per hundredweight. The bill of lading contains no statement of the freight rate charged or to be charged, or the amount of freight to be collected at destination. The freight rate to be charged upon shipments of this kind were the regularly printed and posted tariffs filed with the Interstate Commerce Commission.

[1] The first proposition advanced by appellant is that the man Rigney had no authority to consent to the limitation of the liability of the appellee to $10 per hundredweight on the shipment. It appears that the brother of appellant was a minor, aged 19 years, and, it is argued, therefore had no power to appoint a sub-agent to make the shipment.

A sufficient answer to this contention is found in the pleadings. The appellant alleged in her complaint that

her brother, her agent, delivered the said trunk to the
appellee to be shipped to Santa Barbara, Cal., and that
the same was duly accepted by the defendant for ship-
ment, and that it issued its bill of lading therefor to
plaintiff, agreeing to ship the said trunk to the point
above mentioned. In her reply to the appellee's answer
appellant relied solely upon the fact that the bill of lad-.
ing at the time of the shipment contained no stipulation
by which the liability of the appellee was limited to $10
per hundredweight in case of loss. So far as the plead-
ings are concerned, the appellant made no denial of the
authority to make the shipment, but simply relied upon
the fact that there was no notation on the bill of lading
that the appellee's liability in case of loss should be lim-
ited to $10 per hundredweight. In fact there is an al-
legation that the appellant's agent made the shipment
and signed the bill of lading, but that it contained no
stipulation limiting the appellee's liability. The argu-
ment of counsel for appellant, therefore, as to the author-
ity of the agent to make the shipment is not relevant, and
requires no discussion of the authorities·

[2] Appellant complains of the fact that the court
made no findings of fact or conclusions of law. This was
not called to the attention of the trial court, and no find-
ings were requested by the appellant, and for that reason
the point is not available in this court. Bank v. Mining
Co., 13 N. M. 424, 85 Pac. 970; Radcliffe v. Chaves, 15
N. M. 258, 110 Pac. 699.

[3] Counsel for appellant argue that the court erred
in admitting the bill of lading in evidence. The argu-
ment is based, apparently, upon the fact that the bill of
lading did not bear upon its face any freight rate, and
that there was no testimony or evidence, therefore, of any
consideration for the limitation of liability on the part
of appellee. The argument is clearly faulty and is based
upon an assumption that the shipping rate printed, post-
ed, and filed with the Interstate Commerce Commission,
in case of interstate shipments, as in this case, must ap-
pear in the bill of lading, and that otherwise the shipper

has no notice of the fact. On the other hand, a shipper is conclusively presumed to know the shipping rate according to the printed and posted tariffs filed with the Interstate Commerce Commission. It is beyond the power of a carrier or the shipper to contract for a different rate, and the rate automatically attaches to each and every shipment. Thus, in Kansas City S. R. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683, it is said:

"The valuation the shipper declares determines the legal rate where there are two rates based upon valuation. He must take notice of the rate applicable, and actual want of knowledge is no excuse. The rate, when made out and filed, is notice, and its effect is not lost, although it is not actually posted in the station.'"

In M., K. & T. Ry. Co. v. Walston, 37 Okl. 517, 133 Pac. 42, it is likewise said:

"Neither is the question of the carrier's liability affected by the fact that the plaintiff had no actual knowledge of either the existence or contents of the tariffs and classifications at the time in force. He was charged with knowledge of the lawful rate. * * * Thus it is clear that if the shipper's knowledge of the lawful rate is to be conclusively presumed, and a shipment containing the lower rate, with released valuation, is made and acquiesced in by the shipper, who afterwards upon presentation of the freight bill at the point of destination pays the freight, based on the lower charge, though without knowledge of the legal effect either of the acceptance of the bill of lading or the payment of the freight charges, no recovery can be had beyond that authorized by the tariffs and included in the bill of lading. Neither the carrier nor the shipper has aught to do with fixing the rates. * * * The shipper can elect which of the two rates he desires. If no election is made, and the goods are billed out by the carrier at the lower rate, the shipper, in the absence of fraud, and particularly where without objection the lower rate of freight was afterwards paid, is bound by the terms thereof. If by this passive conduct he elects to take advantage of the lower rate, he cannot then insist upon another different liability on the part of the carrier. Plaintiff's right to recover cannot extend beyond the released valuation of the goods lost, and the freight paid thereon, and the judgment of the court allowing a recovery based upon actual valuation cannot be upheld."

Counsel for appellee have cited many other cases to this point, most of which are referred to in the two cases

above mentioned. We do not deem it necessary to refer to these other cases as the doctrine is thoroughly established upon authority.

[4] Counsel for appellant attempts to make some application of the doctrine that no contract may be made by a carrier with a shipper exempting the carrier from its own negligence· It is argued that the burden is upon the carrier to show himself free from negligence. It is difficult to understand the application of that doctrine to the facts in this case. The contract in this case did not attempt to excuse the carrier from its own negligence, and, in fact, the carrier admits its liability to the extent of the released valuation of the shipment. Contracts of the kind in question are not contracts exempting the carrier from liability for negligence. Thus, in Hart v. Pa. R. Co., 112 U. S. 331, 338, 5 Sup. Ct. 151, 28 L. Ed. 717, 720, it is said:

"The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater."

In Bernard v. Adams Express Co·, 205 Mass. 254, 259, 91 N. E. 325, 28 L. R. A. (N. S.) 293, 18 Ann. Cas. 351, it is said:

"But such a contract as we are considering in this case is not an exemption from liability for negligence in the management of property, within the meaning of the statute. It is a contract as to what the property is, in reference to its value. The purpose of it is not to change the nature of the undertaking of the common carrier, or limit his obligation in the care and management of that which is intrusted to him. It is to describe and define the subject matter of the contract, so far as the parties care to define it, for the purpose of showing of what value that is which comes into the carrier's possession, and for which he must account in the performance of his duty as a carrier. It is not in any proper sense a contract exempting him from liability for the loss, damage or injury to the property, as the shipper describes it in stating its value for the purpose of determin-

ing for what the carrier shall be accountable upon his un-dertaking, and what price the shipper shall pay for the service and for the risk of loss which the carrier assumes."

We have, then, a case of an interstate shipment of freight by an agent with a declared and released valua-tion of $10 per hundredweight. The appellant is con-clusively presumed to know the printed and posted tar-iffs of the appellee filed with the Interstate Commerce Commission, which automatically attach to the shipment as the only legal rate applicable thereto. Under such cir-cumstances it is clear that there is no right to recover for more than the declared valuation.

It follows that the judgment of the district court was correct, and should be affirmed; and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.

SYLLABUS BY THE COURT.

